# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

SPECIAL COUNSEL
EX REL. KELLY HALE,
      Petitioner,

      v.

DEPARTMENT OF VETERANS
  AFFAIRS,
      Agency.

DOCKET NUMBER
CB-1208-18-0002-U-1

DATE: October 5, 2017

# THIS STAY ORDER IS NONPRECEDENTIAL[1]

Shayla Silver-Balbus, Esquire, Oakland, California, for the petitioner.

Mark Pasekoff, Esquire, Washington, D.C., for the relator.

Jason C. Green, Dallas, Texas, for the agency.

### BEFORE

Mark A. Robbins, Vice Chairman

### ORDER ON STAY REQUEST

¶1      Pursuant to 5 U.S.C. § 1214(b)(1)(A), the Office of Special Counsel (OSC) requests that the Board stay for 45 days the proposed removal of Dr. Kelly Hale

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

while OSC completes its investigation and legal review of the matter and determines whether to seek corrective action. For the reasons discussed below, OSC's request is GRANTED.

## BACKGROUND

¶2    In its October 4, 2017 stay request, OSC alleges that it has reasonable grounds to believe that the agency has proposed Dr. Hale's removal in reprisal for his protected activity under 5 U.S.C. § 2302(b)(8) and (b)(9)(C). *Special Counsel ex rel. Kelly Hale v. Department of Veterans Affairs*, MSPB Docket No. CB-1208-18-0002-U-1, Stay Request File (SRF), Tab 1. In support of its stay request, OSC alleges the following facts.[2]

¶3    Dr. Hale is a GS-15 Staff Dentist with the agency's Montana Health Care System (MHCS)'s Billings Community Based Outpatient Clinic (BCBOC), the only one of twelve clinics within MHCS to offer dental services. BCBOC opened in July 2014, shortly after Dr. Hale was hired, and it experienced operational deficiencies and setbacks from the start including equipment that malfunctioned and patient chairs that were not suitable for wheelchair patients. Clinic equipment and physical setups were not Occupational Safety & Health Administration and Health Insurance Portability and Accountability Act compliant and violated Centers for Disease Control and Prevention guidelines and agency policies. Other dangerous situations included the transporting of infected instruments through a public hallway, posing health risks to patients, and the substitution of tap water for sterile water in violation of policy. MHCS and clinic staff members interviewed by OSC[3] and who testified before an agency

---

[2] OSC's recitation of the facts is supported by the declaration of its counsel. SRF, Tab 1, Attachment A.

[3] OSC acknowledges that the agency granted it an informal stay for 21 days which was subsequently extended, during which time it reviewed documentary evidence and began interviewing witnesses, but that the agency indicated that it would not extend the informal stay further.

Administrative Investigative Board (AIB) stated that BCBOC's dental program suffered and continues to suffer from a lack of supervisory oversight and leadership. Shortcomings were attributed to MCHS's longstanding history of improper oversight, including supervision of the clinic by a Chief of Dental Services who was not on-site and Dr. Hale's lack of supervisory authority of the dental staff. An internal review of the clinic in March 2017 also identified failings and recommended that the clinic close until good leadership and standard operating procedures were put in place.

¶4     Under these conditions, Dr. Hale began to raise concerns about the clinic's use of a paper form to refer patients for nonagency consults rather than entering the information in the agency's Computerized Patient Record System (CPRS), as required by agency policy. According to Dr. Hale, the Chief of Dental Services instructed the staff to use the paper form and told Dr. Hale not to ask any more questions about it.

¶5     On December 9, 2015, Dr. Hale disclosed to OSC three matters involving the actions of the Chief of Dental Services in directing subordinate employees to engage in practices that violated agency directives and risked veteran patients' health, including requiring the use of the paper form for referrals for consults rather than entering the information into the CPRS. Dr. Hale believed that the Chief's directions resulted in the clinic's violating statute[4] and regulation,[5] compromising treatment, and endangering patient health. After OSC referred Dr. Hale's disclosures to the Secretary of the Department of Veterans Affairs, the agency investigated Dr. Hale's disclosures. The Office of Medical Inspection (OMI) assembled and led an agency team to conduct the investigation, after

---

[4] 44 U.S.C. § 3102(a) requires the agency to maintain complete, accurate, timely, clinically-pertinent, and readily accessible patient health records.

[5] VHA Directive 2010-027 generally mandates that the Department of Veterans Affairs create appointments that meet the patient's needs with no undue waits or delays.

which a report was prepared which concluded that there were violations of agency policy that posed a substantial and specific danger to public health and safety. The report also recommended that the use of the paper consult forms be immediately stopped, that all referrals for nonagency dental care be entered into CPRS, that the accountability of the Chief of Dental Services be determined, and that appropriate educational, administrative, or disciplinary action be taken. Shortly thereafter, the Chief resigned to assume a staff dentist position. During a subsequent visit to BCBOC by the Acting Chief of Staff at MCHS, Dr. Hale identified himself as the OSC whistleblower.

¶6      Less than 2 weeks later, the MHCS Director chartered an AIB into allegations of employee and patient mistreatment by Dr. Hale. The charter letter contained five allegations of misconduct. Based on a "limited chart review," the AIB sustained four allegations. On July 5, 2017, the Acting Chief of Staff proposed Dr. Hale's removal based on three charges, abuse of patients, disrespectful language or conduct to other employees, and endangering the safety or of causing injury to someone on Department of Veterans Affairs' premises. Each charge described a single incident, and the third included four incidental findings.

## ANALYSIS

¶7      Under 5 U.S.C. § 1214(b)(1)(A)(i), OSC may request that any member of the Merit Systems Protection Board order a stay of any personnel action for 45 days if OSC determines that there are reasonable grounds to believe that the personnel action was taken, or is to be taken, as a result of a prohibited personnel practice. Such a request shall be granted unless the Board member determines that, under the facts and circumstances involved, such a stay would not be appropriate. 5 U.S.C. § 1214(b)(1)(A)(ii). OSC's stay request need only fall within the range of rationality to be granted, and the facts must be reviewed in the light most favorable to a finding of reasonable grounds to believe that a

prohibited personnel practice was (or will be) committed. *See Special Counsel ex rel. Aran v. Department of Homeland Security*, 115 M.S.P.R. 6, ¶ 9 (2010).

¶8     It is a violation of 5 U.S.C. § 2302(b)(8) to take or fail to take, or threaten to take or fail to take, a personnel action against an employee because of any disclosure of information which the employee reasonably believes evidences a violation of law, rule or regulation, or gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.  To demonstrate a prima facie violation of 5 U.S.C. § 2302(b)(8), OSC must demonstrate the following:  (1) the employee made a protected disclosure; (2) the official(s) who recommended or took the personnel action had actual or constructive knowledge of the protected disclosure; (3) a personnel action was threatened or taken; and (4) the protected disclosure was a contributing factor in the personnel action.  *See Office of Special Counsel ex rel. Aran*, 115 M.S.P.R. 6, ¶ 7.  It is a violation of 5 U.S.C. § 2302(b)(9)(C) to take or threaten to take a personnel action against an employee for cooperating with or disclosing information to OSC.

¶9     It appears that Dr. Hale reasonably believed that he was disclosing a substantial and specific danger to public health and safety, specifically, that using the paper form adversely impacted patient care; a violation of law, rule, or regulation, 44 U.S.C. § 3102(a) and agency regulations; and a potential gross waste of funds in that patients who were denied nonagency services received unnecessary mileage and per diem reimbursements.  Based on OSC's assertions, the OMI report substantiated that Dr. Hale's disclosures revealed violations of agency policy that created a safety risk.  It also appears that Dr. Hale participated in protected activities as defined by 5 U.S.C. § 2302(b)(9) by cooperating with and disclosing information to OSC.

¶10     Based on OSC's allegation in its stay request, the proposal to remove Dr. Hale constitutes a threatened "personnel action" as defined in 5 U.S.C.

§ 2302(a)(2)(A). That definition includes, in pertinent part, an action taken under chapter 75 of title 5. 5 U.S.C. §§ 2302(a)(2)(A)(iii), 7512(1).

¶11    Finally, the contributing factor element may be established through the knowledge/timing test, i.e., that the official taking the personnel action knew of the protected activity and the personnel action occurred within a period of time such that a reasonable person could conclude that the protected activity was a contributing factor. *See Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 18 (2015); *Carney v. Department of Veterans Affairs*, 121 M.S.P.R. 446, ¶ 7 (2014). OSC contends that the Acting Chief of Staff, the proposing official, had actual knowledge of Dr. Hale's disclosures before July 5, 2017, when he issued the proposal notice. After the OMI report was issued on October 31, 2016, and before the time the Chief of Dental Services resigned, 3 days later, the two discussed the report's findings. And, during a meeting several weeks later, the appellant identified himself to the Acting Chief of Staff as the OSC whistleblower. OSC further indicates that the proposal notice was issued 11 months after the appellant first complained to the Chief of Dental Services and 7 months after the appellant made his disclosure to OSC. *See Mastrullo*, 123 M.S.P.R. 110, ¶ 21 (recognizing that a personnel action taken within approximately 1 to 2 years of an appellant's protected disclosures satisfies the knowledge/timing test).

¶12    Considering the deference that generally should be afforded to OSC in the context of an initial stay request, there are reasonable grounds to believe that the agency threatened to take a personnel action against Dr. Hale based on his protected activity in violation of 5 U.S.C. § 2302(b)(8), (b)(9)(C) when it proposed his removal.

## ORDER

¶13    Based on the foregoing, granting OSC's stay request would be appropriate. Accordingly, a 45-day stay of the appellant's proposed removal is granted. The

stay shall be in effect from October 5, 2017, through and including November 18, 2017.  It is further ORDERED that:

(1)     Dr. Hale shall remain in his position;

(2)     The agency shall not effect any changes in his duties or responsibilities that are inconsistent with his salary or grade level, or impose upon him any requirement which is not required of other employees of comparable position, salary, or grade level;

(3)     Within 5 working days of this Order, the agency shall submit evidence to the Clerk of the Board showing that it has complied with this Order;

(4)     Any request for an extension of this stay pursuant to 5 U.S.C. § 1214(b)(1)(B), as amended by Pub. L. No. 115-42,[6] and 5 C.F.R. § 1201.136(b) must be received by the Clerk of the Board and the agency, together with any further evidentiary support, on or before November 3, 2017; and

(5)     Any comments on such a request that the agency wants the Board to consider pursuant to 5 U.S.C. § 1214(b)(1)(C) and 5 C.F.R. § 1201.136(b) must be received by the Clerk of the Board on or before November 10, 2017.


FOR THE BOARD:                              _____
                                            Jennifer Everling
                                            Acting Clerk of the Board

Washington, D.C.

---

[6] As passed by the House of Representatives on May 25, 2017, passed by the Senate on June 14, 2017, and signed into law on June 27, 2017.